Shackelford, J.,
delivered the opinion of the Court.
The complainants, at the March Term, 1865, of the Butherford Circuit Court, recovered two judgments against T. H. Carney — one on the 14th of March, 1865, and one on the 15th of the same month, for about *506 $8,000, The judgments were registered on the 4th of May, following. Executions were issued from these judgments, and returned nulla bona, on the 8th of July, thereafter. The bill in this case was filed on the 30th of July, 1865. The allegations of the bill are: “On the 4th of March, a few days before the sitting of the court in which the judgments were rendered, T. H. Carney, by deed, conveyed to defendants two tracts of land, for the consideration of $36,000, in the payment of debts he owed them. The debts are set forth in the deed. It was absolute and for the consideration specified. On the day of its execution, it was proven by the subscribing witnesses. The Clerk, in his certificate, omitted to state, the witnesses were personally acquainted with the bargainor in the deed.” On the 8th of August, 1865, the defendants had the record of probate corrected with proper reference, in conformity with the provisions of sections 2080 and 2081 of 'the Code.
There is no charge or allegation of fraud in the bill. They allege that they have a lien in equity upon the lands, and seek to enforce it, and the cloud created by the deed and defective probate upon this lien removed; that an attachment issue, and the lands be sold for the payment of this debt. An attachment and injunction were granted by the Chancellor, and the lands were attached. The defendants, in their answer, insist upon the validity of their purchase; exhibit their deed; that the registration of it under the probate was valid; that if the original certificate of probate was invalid, the amended certificate relates back *507 to the original prohate and registration, and relieves the deed of all exceptions. The Chancellor was of opinion the complainants were not entitled to relief, and dismissed the bill; from which they have appealed to this Court. Two questions are presented for our consideration:
1st, Was the original probate of the deed of the 4th March, 1865, defective, and did- the subsequent correction and registration of the probate, under the provisions of sections 2080 and 2081 of the Code, relate back, so as to defeat any intervening rights that may have attached?
2nd, Did return of the execution, and registration of the judgments, create such v an equitable lien as would give a Court of Chancery jurisdiction of the case?
The first question depends upon the construction to be given to sections 2080 and 2081 of the Code. By section 2080, the unintentional omission by the Clerk, of any words in a certificate of an acknowledgment, or a probate of any deed, shall, in no wise, vitiate the validity of such deed, but the same- shall be good and valid, to all intents and purposes, if the substance of said authentication required by law is in the certificate. By section 2081, if the omission be matter of substance, the Clerk, on application of either party interested, may correct such mistake or omission of words in such certificate, or any such deed or instrument. Section 2083 provides, the Register shall record the correction in the proper book of his office. In the case under consideration, the Clerk omitted to state in *508 Ms certificate, tlie witnesses were personally acquainted with the bargainor. This is required by the positive words of the Statute, and are words of substance. The object and purpose of the Legislature was, to prevent fraud; and unless this fact appears in the certificate of the Clerk, the probate is defective in substance. This Court held, in the case of Fall & Cunningham vs. John R. Roper and others, 3 Head, 485: “The omission of the words by the Clerk, in the certificate of probate, the within named bargainor, with whom I am personally acquainted,” is fatal to the probate of the deed. The Court say it is one of the most important requirements against fraud, in the formula of the Statute. The principle of that case is applicable to the case under consideration. The words omitted in this probate are: “they were personally acquainted with the bargainor.” These are words of substance, and fall clearly within the principle settled in 3 Head. The probate being defective in substance, what is the legal consequence, after the probate and registration, and before the defect .was cured, under the provisions of the Code referred to? The complainants recovered their judgment. Sec. 2980 of the Code, provides that a judgment shall be a lien on the lands of the debtor for twelve months; provided, etc. The deed not being proved as required by law, was not good as against judgment creditors. The rights of the parties attached upon the rendition of the judgment, and the subsequent correction and registration could not divest the rights fixed by law. It was not contemplated by the Legislature, the correction of the probate should relate *509 back and divest any rights that had attached. Sec. 2083 was intended to prevent a second registration of the deed, and it would be good against all persons, after the correction. We are, therefore, of opinion the registration was invalid as against the judgment creditors before the correction of the probate, and the correction did not have a retroactive effect, so as to divest the rights of persons that attached before that was done.
2nd, The probate being defective, the complainants had a lien for the satisfaction of their judgments at law. They failed to take out execution, as provided by section 2982 of the Code, and sell within twelve months, but registered their judgments, as provided by section 2984 of the Code, -which is, “a judgment or decree shall not bind the equitable interest of a debtor in real estate or other property, unless within sixty days from its rendition, a memorandum of the judgment or decree, stating the amount and date thereof, with the names of the parties, is registered in the Register’s office;” and by section 2986, the lien shall cease, unless the bill is filed within thirty days from the return of the execution. The executions in this case were returned nulla bona. The object and purpose of these sections of the Code, was to reach the equitable interest of the debtor in the property.
This bill was filed under the provisions of these sections of the Code. Upon the rendition of the judgments, the complainant had a lien on the land, plain and unembarrassed by provisions of section 2980; and unless the land was levied upon by execution and sold *510 from the judgments which were a lien, within twelve months from the rendition of the judgment, the lien is lost.
The judgment debtor, Carney, by his deed of 4th March, 1865, conveyed his entire interest in the land to the defendants. The deed was for a valuable consideration, and he had no equity in the lands conveyed. It was good and valid as between him and the defendant. The Statute rendered it void as to judgment creditors, and the complainants, upon the rendition of their judgment, had a plain and unembarrassed remedy at law. The deed and defective probate, was no cloud upon the title. The judgment debtor, Carney, had no equity in the lands, that would authorize the filing of a bill to subject that interest. Why file a bill when the remedy was plain and unembarrassed at law? Ho lien was created by the registration of the judgment, under the provisions of the Code referred to. Ho demurrer having been filed, and the parties having amended, it is insisted, under section 431 of the Code, it is a waiver of the jurisdiction, and the court will try the matters involved, though they are of legal cognizance. The principle is correct; but the court taking jurisdiction, it does not necessarily follow, that the complainants are entitled to relief. The lien was purely a legal one, given by section 2950 of the Code, and provides the mode by which it shall be enforced — that is, by execution and sale of the property within twelve months. The aid of a Court of Chancery, was not necessary to enforce it; the filing of the bill in the case, did not continue *511 the lien — it expired, by operation of law, before this case was brought to a hearing; and the defendants in the judgment at law, had no interest in the lands that could be the subject of equitable cognizance. All matters in controversy between the complainants and the judgment debtor, Carney, were settled by the judgment rendered in the Circuit Court. The case of Niley vs. Bridgeman et al., 1 Head, 68, referred to by the counsel for complainants, is not analogous to the case under consideration. In that case, the defendant, Bridgeman, had a remainder interest in the land which the bill was filed to subject. An order pro confesso was taken against him. It was held, although the demand may be a purely legal one, an order pro confesso, or an answer to the merits, is a waiver, under the Act of 1852, ch. 365, of the question of jurisdiction. The defendant, Bridgeman, was owner of the remainder interest at the rendition of the decree, and the court ordered and directed a sale of that interest. In the case under consideration, the defendant, Carney, had no interest in the land. The legal lien of the complainants had expired by operation of law; consequently, there was nothing to decree a sale of. It is insisted by the complainants, the attachment sued out in this case, created a lien upon the lands. The bill was not filed as an attachment bill. None of the causes required by the sections of the Code, authorizing the issue of attachments, are set forth in the bill. There is no allegation of fraud; the bill simply prays an attachment to issue.
*512 Looking to the bill and the statements thereof, we are of the opinion the case does not fall within the provisions of the law authorizing the issuing of attachments; and the issuance and levy of the attachment, in this case, created no lien upon the lands.
We are of the opinion, therefore, there is no error in the decree of the Chancellor dismissing the bill; and it will be affirmed.